WELLINGTON R. BURT v. HENRY GAMBLE ET AL.

*Mortgage—Debts secured—Merger—Execution sale—Redemption by creditor—Interest acquired—Notice—Lis pendens.*

1. A mortgage securing the payment of $4,000 within 90 days from date, and all obligations the mortgagee may assume or become liable for by reason of any paper indorsements or obligations he may make for or at the request of the mortgagor, and which provides that, upon payment of such sum or sums for which the mortgagee shall become liable within the 90 days, he shall discharge the mortgage, secures only such claims, aside from the $4,000, as are based upon indorsements or obligations made within the 90 days.

2. Such a mortgage will not secure the mortgagee for the payment of the pre-existing note of the mortgagor, upon which the mortgagee is not an indorser, nor will such payment be covered by a mortgage securing the mortgagee for all indorsements theretofore made, or which he shall thereafter make, for the benefit of the mortgagor.

3. An accommodation indorser, who was secured by mortgage, was called upon by a bank at which the note had been discounted for its payment. He paid the amount due, and received from the bank an assignment of whatever rights it had acquired as purchaser of the mortgaged premises at a sale made under an execu-

tion issued on a judgment rendered against the maker in a suit on the note, and then filed a bill to foreclose his mortgage. And it is held that the assignment did not affect the mortgage, there being nothing to indicate such an intention, and that the law does not require the application of the doctrine of merger.

4. A bill was filed to foreclose two mortgages, one given to secure all obligations which the mortgagee might become liable for as indorser within a stipulated time, at the mortgagor's request, and the other, all indorsements theretofore or subsequently made for his benefit. The mortgagee paid certain notes under the erroneous supposition that they were covered by the mortgages, and, in his bill, claimed the amounts so paid as due thereon, but did not set forth in support of such claim an agreement of the parties, made after a settlement between them, which provided that said claims should be treated as a portion of the mortgage debt, but which omission was supplied by amending the bill on the hearing to cover the proofs made in that regard. And it is held that the *lis pendens* filed with the original bill was sufficient notice to a subsequent incumbrancer, who became such without actual notice of said agreement, of the rights of the complainant thereunder.

5. A mortgagee, having acquired the interest of an execution purchaser in the mortgaged premises, entered into an agreement with the execution debtor, before the expiration of the redemption year, by which certain additional claims were to be included in the mortgage security. After the filing of a foreclosure bill and a notice of *lis pendens,* a second judgment creditor sought to redeem, and received a sheriff's deed, under the provisions of How. Stat. §§ 6126, 6140. And it is held that such agreement was valid as against said judgment creditor.

Appeal from Saginaw. (Edget, J.) Argued November 21, 1893. Decided January 9, 1894.

Bill to foreclose two mortgages. Defendant Tarsney appeals. Decree affirmed. The facts are stated in the opinion.

*McKnight, Humphrey & Grant,* for complainant.

*Tarsney & Wicker,* for appellant.

HOOKER, J. The complainant files a bill for the foreclosure of certain instruments, which he recognizes as

mortgages, given to him by defendant Gamble. The first was a warranty deed, executed on April 6, 1888, by Gamble and wife, of the south 50 acres of the N. W. ¼ of section 2, and the N. ½ of the S. E. ¼ of section 3, township 12 N., of range 4 E. At the same time an agreement in writing was executed by Burt and Gamble, acknowledged by the latter, reciting the fact that said deed had been given, and also that Gamble had delivered to Burt six notes of $2,000 each, with a land contract of the above-described lands, executed between Gamble and one Patrick La Velle, and stating that said deed and assignment of the land contract and delivery of the six notes were made for the purpose of securing to Burt the sum of $4,000 within 90 days from the date of such writing, and all obligations that Burt might assume or become liable for by reason of any paper indorsements or obligations that he might make for or at the request of said Gamble; upon payment of which sums Burt was to reconvey the premises, contract, and notes to Gamble. On May 2, Gamble and wife made a warranty deed, conveying to Burt the S. W. ¼ of S. E. ¼ of section 3, township 12 N., range 4 E. An instrument in writing, dated May 4, 1888, but acknowledged on May 12, 1888, by both Burt and Gamble, recited this deed, and stated: " Said conveyance was made for the purpose of securing said Wellington R. Burt for all indorsements heretofore made, or that may hereafter be made, by him, for the benefit of said Henry Gamble." It required Burt to reconvey upon payment by Gamble.

At the time of making the deed first mentioned, Burt indorsed a note of $4,000 for the accommodation of Gamble, the proceeds being received by Gamble from the Home National Bank. This note was renewed several times, the last renewal being February 20, 1889. Another note, for $800, was made August 7, 1888, and was renewed until April 13, 1889. There was also a note of $2,139.77, given

July 31, 1886, which was renewed from time to time until March 27, 1889. All of these notes and their renewals were made by Gamble, payable to Burt, who indorsed them, and were negotiated by Gamble at the bank for his own purposes. On June 29, 1889, the three notes were merged in one for the sum of $6,939.73, made, indorsed, and negotiated as before. On October 2, 1889, this note was protested, and suit was brought thereon against Gamble, and a judgment recovered, and on April 21, 1890, the bank caused execution to be levied upon the lands conveyed to Burt as aforesaid, and the interest of Gamble in the lands was bid in by the bank at execution sale for $25 for each description,—a total of $75,—on June 21, 1890. The bank thereupon called upon the indorser, Mr. Burt, for payment, and on July 2, 1890, he paid to the bank the sum of $7,251.95, taking from the bank a paper reading as follows:

"EAST SAGINAW, MICH., July 2, 1890.
"For value received, the Home National Bank, of East Saginaw, hereby sells, assigns, and transfers to Wellington R. Burt, of East Saginaw, Michigan, all the right, title, and interest which said bank has in and to the 'Henry Gamble Property,' so called, the interest being obtained by suit to collect note.
[Signed] "J. H. BOOTH, Cashier."

In addition to the foregoing, Burt had paid to the Second National Bank, at the request of Gamble, his note for $2,500, given to Lindsay & Gamble.

It also appears that on September 7, 1889, Burt had commenced an action against Gamble for the recovery of $198,000, claimed to be due upon dealings between them relating to lumber. Defendant Tarsney's firm were attorneys for Mr. Gamble in this litigation. Gamble did not redeem the land from the execution sale by the bank, but before the expiration of the year within which he might have done so, viz., on February 13, 1891, a settlement was

made between him and Burt of the litigation, and some other matters in which they were interested. This was evidenced by a writing containing the following, viz.:

"The said Henry Gamble does hereby also acknowledge and agree that there is due to the said Wellington R. Burt, for which said mortgage or trust deed is security, and which is a lien and incumbrance upon the land in Saginaw county, Michigan, hereinbefore described, a certain promissory note made March 21, 1888, due in three months after its date, to Lindsay & Gamble, for $2,500, at the Second National Bank of East Saginaw, Michigan, signed by Henry Gamble, and indorsed by Lindsay & Gamble; and also the claim of the Home National Bank against said Henry Gamble, which has been assigned to the said Wellington R. Burt, by an assignment dated July 2, 1890, and upon which claim there is due upon that date the sum of $7,251.95; both of which said last above claims are to remain and be valid and subsisting liens against said Henry Gamble, and for which said land in Saginaw county, Michigan, above described, is pledged and held as security.

"In consideration of the above and foregoing premises and undertakings on the part of the said Henry Gamble, said Wellington R. Burt does hereby agree and does release and acknowledge satisfaction and payment from the said Henry Gamble of all book accounts and debts due and owing to the said Burt for and on account of said land transactions and lumbering contracts in the Upper Peninsula of Michigan, and does hereby release and acknowledge payment of all other claims and accounts against the said Henry Gamble, excepting the said note for $2,500, above mentioned, and the claim of the Home National Bank against said Henry Gamble, assigned to Wellington R. Burt, as above stated, amounting to $7,251.95; all of which said claims are still due and owing from the said Henry Gamble to the said Wellington R. Burt.

"And it is also mutually agreed between the parties hereto that the suit now pending in the Saginaw circuit court between the said parties be discontinued without cost to either party, and that all matters of difference between them are hereby mutually settled and adjusted, as above set forth."

The settlement agreed upon in this instrument was carried into effect, and defendant Gamble had the benefit of

the same. The suit for nearly $200,000, brought by Mr.
Burt against him in the Saginaw circuit, was on February
18, 1891, discontinued; Messrs. Tarsney & Weadock acting
as attorneys for defendant Gamble in the matter of this
suit and this settlement.

On June 10, 1891, this bill and a *lis pendens* were filed
against Gamble and wife. On September 16, 1891, John
J. Campbell assigned to defendant Tarsney a judgment
against Gamble for $978.82, rendered in the Saginaw cir-
cuit court on February 10, 1891. Execution issued on
September 17, 1891, and levy was made September 18,
1891, upon all the right, title, and interest of Gamble in
the land in question. September 22, 1891, a sheriff's deed
was made to Tarsney, reciting the proceedings in the suit
by the Home National Bank, including sale, etc., the
recovery and assignment of the Campbell judgment and
the levy of execution, etc., the filing with the register of
deeds of a certified copy of the Campbell judgment, under
which Tarsney claimed the right to purchase the interest
of the original purchaser, a copy of the assignment of such
judgment, together with the necessary affidavits, and that
he had paid to the register the amount bid upon the sale
upon the first judgment.

Henry Gamble answered the bill, and proofs were taken
in open court. On October 19, 1891, the court filed a
written opinion, holding that before the bill was filed the
Home National Bank had acquired all of the legal title of
Gamble, subject to his right of redemption, and was, there-
fore, a necessary party to the proceedings; also, that it
appeared that defendant Tarsney had, since the filing of
the bill, taken a sheriff's deed pursuant to the statute,
which clothed him with all the legal title of Gamble, and
subrogated him to his rights. The statute referred to is
How. Stat. §§ 6126, 6140. Leave was given to amend the
bill and bring in these parties, which appears to have been

done.     Some other amendments were made, but they need not be discussed.     From a decree in favor of the complainant, defendant Tarsney alone appeals.

It appears to be conceded that the deeds and defeasances should be considered mortgages.     The items included in complainant's bill are:

1. The note of $6,939.73, given June 29, 1889, comprising (a) the old note of $2,139.77, antedating both mortgages; (b) the $4,000 note, mentioned in the first mortgage; (c) the $800 note, given after the execution of both mortgages.

2. The amount of $2,500, paid by Burt on June 23, 1888.

By the terms of the first mortgage it secured (1) the payment of $4,000 within 90 days; (2) "all obligations that the said Burt may assume or become liable for by reason of any paper indorsements or obligations he may make for or at the request of the said Henry Gamble." It further provided that, "upon the payment of such sum or sums for which the said Burt shall or may become liable within the time aforesaid, the said Burt agrees to reconvey," etc.     This latter provision makes it clear that this mortgage was security for such claims only, in addition to the $4,000 item, as were based upon indorsements, etc., within 90 days.     The items of $2,139.77 and $800 were not covered, because not incurred within the period of 90 days after the execution of the defeasance.     The $2,500 item arose from a payment by Burt of an outstanding obligation of Gamble, and did not come within the language: "All obligations that the said Burt may assume or become liable for by reason of any paper indorsements or obligations he may make," etc.     It follows that the $4,000 item only was secured by this mortgage.

The second mortgage was broader, and clearly covered all indorsements theretofore or subsequently made for the benefit of Gamble.     This, by its terms, covered all of the

claims except that for $2,500. It was not broad enough to cover that.

It is contended by the appellant that when Gamble made a note payable to Burt for $6,939.73, being the aggregate of the three items, viz., $2,139.77, $4,000, and $800, it extinguished these mortgages; or, if it did not, that when the paper was indorsed by Burt, and taken by the bank, the security went with it to the bank, and was extinguished by the recovery of a judgment based thereon, and sale on execution; that by such purchase the bank became possessed of all of Gamble's interest in the land, subject to the rights of redemption of parties interested. We think otherwise. The evidence shows that Burt was not at that time Gamble's creditor as to these notes, but that the bank was. Burt was an accommodation indorser merely; the new note being made payable to him for Gamble's use and benefit. He might never become such creditor, and in fact did not as to such note until the bank required payment of him upon his indorsement, by which payment a right of action upon his mortgages first accrued.

We think that the assignment of the rights of the bank under this judgment did not affect the mortgages. There is nothing to indicate such intention, and to so hold would be inequitable. In such case the law does not require that the doctrine of merger be applied. *Dutton v. Ives*, 5 Mich. 515; *Cooper v. Bigly*, 13 Id. 463; *Snyder v. Snyder*, 6 Id. 470; *Tower v. Divine*, 37 Id. 443; *Jackson v. Evans*, 44 Id. 510; *Ann Arbor Savings Bank v. Webb*, 56 Id. 377; *Powell v. Smith*, 30 Id. 451; *Hurst v. Beaver*, 50 Id. 612; *Baker v. Clark*, 52 Id. 22.

The effect of what has been said is to determine that, of the amount paid by Burt to the bank, $4,000 is secured by the first mortgage, and all is secured by the second, by virtue of the terms of the mortgages, exclusive of any effect of the agreement made subsequently by Burt and

Gamble. The $2,500 debt was not included in the amount secured by either. On February 13, 1891, the complainant and Gamble made a settlement of some matters of difference between them. This settlement, which has been mentioned herein, was evidenced by a writing signed by the parties, wherein it was explicitly agreed that both the $2,500 item and the claim which had been assigned by the bank to Burt should be secured by these two mortgages. It is true that the writing mentions but one mortgage, but both descriptions are mentioned, which shows that both were intended. As between Burt and Gamble, this paper was valid; but it is attacked upon the ground that the transfer to Burt of the interest purchased by the bank at the execution sale did not convey to him all of the interest of the bank, because it was not authorized by the board of directors of the bank, and was not a sealed instrument. But we think one of two things was true: The bank received payment from Burt, and the bank's claim upon the property passed to Burt, or it was extinguished. It certainly could not retain both the money and the land. In the latter case there was nothing left to be the subject of redemption. In the former, the interests were all vested in Burt, Gamble, and La Velle, who had a contract of purchase. We have no doubt that Burt succeeded to the bank's interest, however. But, in either event, Burt and Gamble were in a situation to make the contract referred to, which we think binding upon them.

As already stated, this contract was made on February 13, 1891. Defendant Tarsney testifies that he was ignorant of this agreement, and claims that it is void as to him, and that his redemption and the sheriff's deed vests the title in him, discharged of the mortgages, or, at most, subject to said mortgages according to their terms, unaffected by the agreement of February 13. The bill and *lis pendens* were filed June 10, 1891, some three months before defend-

ant purchased the Campbell judgment. It was constructive notice of the pendency of these proceedings. Defendant asserts that this was not notice to him of any rights of the complainant under the writing of February 13, which was first made a part of the bill by amendment upon the hearing. The bill, as originally drawn, made claim of the amount for which the decree below was rendered, alleging that these mortgages were security for it, and we think this was sufficient notice. *Heim v. Ellis,* 49 Mich. 243; 1 Beach, Mod. Eq. Jur. § 374, and note; *Bellamy v. Sabine,* 1 De Gex & J. 566.

We find no error in the proceedings, and the decree of the circuit court in chancery will be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.