REBECCA M. SMITH v. THE MICHIGAN STATE BANK OF EATON RAPIDS, MARY MILLER, EDWIN S. HARRIS, AND SAMUEL POLLOCK.

*Execution sale—Redemption.*

After the levy of an execution, the judgment debtor conveyed the land levied upon, and his wife, to whom the grantee executed mortgages upon the land to secure part of the purchase money, joined with her husband in a bond to the grantee conditioned for the payment of the judgment. More than a year but less than 15 months after the sale of the land on the execution, the obligors in the bond having failed to perform its conditions, the grantee raised upon her indorsed note the money necessary to redeem the land, and paid the same to the purchaser at the execution sale, who, in order to secure the indorser on said note, executed to him a quitclaim deed of the land. And it is held that the quitclaim deed conveyed only the rights of the purchaser under the sheriff's certificate of sale, and that the arrangement operated to protect the mortgage interest of the wife of the judgment debtor, and to give her the right to pay, prior to the execution of the sheriff's deed, the amount due on the certificate of sale, and thus discharge the obligation of her bond.

Appeal from Eaton. (Smith, J.)     Argued June 6 and 7, 1894.    Decided September 25, 1894.

Bill to redeem from an execution sale, and to declare the validity of certain mortgages. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*W. S. & J. M. Powers,* for complainant.

*John M. Corbin,* for defendants.

LONG, J. The facts in this case are not in dispute. It appears that on March 17, 1891, Edward Smith, who is the husband of complainant, was the owner and in possession of certain premises in Eaton Rapids, this State. Prior to that date, Delilah Witt had recovered a judgment against him for the sum of $400 and upwards. An execution had been issued upon such judgment, and placed in the hands of defendant Pollock, who was the sheriff of Eaton county. A levy was made on the premises under such execution on March 20, 1891, and the premises sold July 8 thereafter, but the certificate of sale made by the sheriff was not actually delivered by him to the purchaser or filed in the office of the register of deeds of that county until July 15. Delilah Witt, the judgment creditor, became the purchaser of the premises at the sum of $427.65.

March 21, 1892, Edward Smith exchanged and conveyed the premises to the defendant Mary Miller. Smith received from Mrs. Miller in payment for the land a store building and stock of groceries in Nashville, this State, and two mortgages on the Eaton Rapids property, aggregating $1,750. These mortgages were executed by Mary Miller, and made payable to the complainant, Rebecca M. Smith. At the time of this trade the Eaton Rapids property was incumbered by a mortgage held by John M. Corbin, some tax liens, and the execution levy above mentioned; the whole amounting to about $900. When the property was exchanged, neither of the parties had ready money to pay

or satisfy the incumbrances on the Eaton Rapids property, so it was agreed that Smith and the complainant should give a bond, by the terms of which they were to pay and remove all the incumbrances on the Eaton Rapids property. To secure the payment of the incumbrances, the $1,750 was divided into two mortgages, one for $900 and one for $850, and it was stipulated in the $900 mortgage that it should be a first mortgage, and not be recorded, but deposited with bankers at Nashville until such incumbrances were removed. Efforts were made by Edward Smith to procure money to pay off the incumbrances, and, failing to do this, he attempted to get an extension of time, but this also failed; but on October 11, 1892, the complainant, having secured the money, filed with the register of deeds of Eaton county an affidavit, together with copies of her mortgages and notes, showing the true sum due upon her mortgages, as evidence of her liens upon the premises, and at the same time deposited with the register the amount due upon the Witt sale for principal, interest, and costs, amounting to $466, together with the amount due upon the mortgage held by Mr. Corbin. The amount has been accepted by Mr. Corbin, and that mortgage is out of the case. The tax liens were also paid and satisfied.

It further appears that on August 21, 1892, Delilah Witt executed and delivered to defendant Harris a conveyance in the form of a quitclaim deed, for the purpose of assigning her right under the execution purchase. On October 15, 1892, the complainant, after depositing the money in the register's office to meet the incumbrances, sent her attorney to see Mrs. Miller and Mr. Harris for the purpose of perfecting a redemption of the premises bid in under the execution sale. A tender was made of the full amount claimed, and interest and expenses, and Mr. Harris was asked to convey to Mrs. Miller the rights

which he had secured from Delilah Witt. They refused to take this money, referring complainant's attorney to Mr. Corbin, saying that he had done all the business, and that they knew but little about the transaction.

Complainant thereupon filed this bill for the purpose of determining the rights of the parties in the premises. Defendants contend that Harris became the absolute owner of the premises under his deed from Delilah Witt. Complainant claims that the circumstances under which the deed was given to Harris show that he took it merely as security for his indorsement of Mrs. Miller's note, and for the purpose of protecting Mrs. Miller in her interest in the premises.

It appears from the testimony that Mrs. Miller, finding that the complainant and her husband had taken no steps to pay off the claim under the execution, went to defendant Harris, and gave her individual note to him, signed by her husband as surety, for $455. Mr. Harris indorsed this note over to the bank, and the money was realized upon it by Mrs. Miller, and used by her in paying the Witt judgment, Mr. Harris taking this quitclaim deed from Mrs. Witt for the purpose of securing himself for his indorsement of Mrs. Miller's note. Mr. Harris testified that he was to hold this quitclaim as security for signing the note. Mrs. Miller still owes the bank the amount of money represented by the note.

It is therefore contended by complainant:

1. That the right of redemption as to her had not expired when she tendered the money, for the reason that the sheriff had not given a deed to Harris, or to any one else, and that the right to redeem remains until such deed is actually made, whether the time named in the statute has expired or not.

2. That when she deposited the money with the register of deeds, on October 11, 1892, and when she offered to Mrs. Miller and Mr. Harris, on October 15, 1892, to pay the amount of the execution sale and the note given at

the bank, and to reimburse and pay all that Mrs. Miller, Mr. Harris, and the bank had paid out, it was within the time of redemption, and it was the duty of Mr. Harris to accept the money, and discharge or cancel his claim under the sheriff's certificate of sale.

3. That defendant Mary Miller redeemed the premises by the payment of the money which she borrowed from the bank, and that the attempt now to hold the assignment of the sheriff's certificate as a purchase by Harris is a fraud upon complainant, and that Mary Miller is in collusion with Harris and the bank to relieve the land of complainant's mortgages.

4. That the broadest latitude which can be given to the transaction is that the sheriff's certificate was transferred to Harris as security for the money loaned to Mrs. Miller; and that, under the familiar principle that whenever property is transferred, no matter in what form or by what conveyance, as security for a debt, the transferee is merely a mortgagee, and has no other rights or remedies than the law accords to mortgagees, Harris acquired no title to the land, and his rights are those of a mortgagee.

The sale under the execution was made on July 8, 1891. The 15 months from that date would expire on October 8, 1892; and, if the defendants' contention be correct,— that the 15 months is to be computed from the date of sale,—no person could redeem after that time, and the money deposited in the office of the register of deeds by Mrs. Smith would not effect a redemption. But complainant contends that her right to redeem continued for the full period of 15 months from the time the certificate of sale was given to the purchaser under the execution sale and the depositing of the certificate in the office of the register of deeds. This certificate was given the purchaser on July 15, 1891, and deposited in the register's office the same day, so that the 15 months' time for redemption would not expire until October 16, 1892; and, if the complainant's contention be correct, the moneys were deposited by her in time.

But, however this may be, the arrangement made

between Mary Miller and Mr. Harris by which he pur-
chased in the Witt bid can be construed only as amount-
ing to a redemption of the premises. Mr. Harris testified
that he took the deed from Mrs. Witt as security for his
indorsement upon the note of Mrs. Miller. It is evident
that Harris did not suppose he was acquiring the absolute
title to the premises, but that, as he admits, he took the
deed as security, and was to deed over to Mrs. Miller when
the note was paid. If the deed to Harris was intended to
be and was an absolute conveyance to him, it cut off, not
only the Miller title, but also the complainant's mortgages.
Mrs. Miller desires to have the conveyance treated as
absolute for the purpose of cutting off these mortgages,
and she and Harris refused the tender for the purpose of
accomplishing that object; yet they claim, as between
themselves, it is to be treated and held as a mere security.
The arrangement sought to be carried out cannot deprive
the complainant of her right to pay the debt and secure
her mortgage rights in the premises. At the time the
deed was made by Mrs. Witt to Harris no deed had been
made by the sheriff on the execution sale. All Mrs. Witt
held was the certificate of sale, and it was her right that
Harris purchased and had assigned to him. Mrs. Miller
held the title in fee, and had the right to redeem. She
procured Harris to hold the bid under the deed to him,
and with the understanding that it should operate as a
redemption, so far as she was concerned. This arrange-
ment must also be held to have protected the complain-
ant's mortgage interest in the premises, and to give her
the right to pay, at the time payment was tendered, the
amount of the bid, as she and her husband had agreed to
do, and thus discharge the obligation of the bond to
remove this incumbrance. The case is very similar to
*Banning v. Sabin,* 51 Minn. 129, and, under the facts

there stated, it was held that the transfer amounted to a redemption.

In this view of the case, it is quite unnecessary to decide whether the deposit made by complainant with the register of deeds was in time to redeem from the sale.

The decree of the court below will be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.