PELLSTON PLANING MILL & LUMBER CO. *v.* VAN WORMER.

1. EXECUTION—RIGHT TO REDEEM—STATUTES.

> The right to redeem from execution sales is a creature of statute.

2. SAME.

> The right to redeem from execution sale, in the absence of contract, continues during the period fixed by statute, and no longer.

3. SAME.

> The period within which the execution debtor may redeem is fixed at one year from the time of execution sale, by Act No. 314, Pub. Acts 1915, chap. 23, §§ 96, 97 (3 Comp. Laws 1915, §§ 12911, 12912), and is not extended by section 113, giving execution creditors 15 months to redeem.

4. SAME—RIGHT TO REDEEM—EXTENSION OF TIME—VERBAL AGREEMENTS.

> The right to redeem from an execution sale, being a right created by law, the time for its exercise may be prolonged by verbal agreement.

5. SAME—REDEMPTION—STATUTORY RIGHTS—WAIVER.

> The statutory period of redemption from execution sale of one year is waived by a senior execution creditor where, after the expiration of such period, and before any junior execution creditor has acquired any rights, he accepts payment of his judgment.

6. APPEAL AND ERROR—CHANCERY APPEALS—JUDICATURE ACT PRESERVING EVIDENCE EXCLUDED FOR REVIEW.

> The evidence in a chancery case will not be reviewed on appeal where it is not taken down nor returned pursuant to Act No. 314, Pub. Acts 1915, chap. 17, § 5 (3 Comp. Laws 1915, § 12493), relating to the exclusion of testimony by the trial court, and providing that the court may, in its discretion, if the excluded evidence is brief, permit the same to be taken down by the stenographer separate and apart from other testimony and to be returned to the appellate court under certificate of the trial court.

7. EXECUTION—RIGHTS OF JUNIOR EXECUTION CREDITOR—REDEMPTION.

> The levy of a junior execution creditor upon land sold to a

senior execution creditor is upon lands of the execution debtor and not upon the latter's right of redemption.

8. SAME—SUBROGATION—REDEMPTION.

All rights of subrogation to the rights of the senior execution creditor by a junior execution creditor are barred where the senior levy is discharged after the period of one year from the sale and within the 15-months' period by the acceptance of payment from the execution debtor. OSTRANDER and STONE, JJ., dissenting.

9. DAMAGES—SPECULATIVE DAMAGES—CONJECTURAL DAMAGES.

On a bill to set aside a sheriff's deed to an execution creditor, evidence of the loss of profits from the operation of a mill, *held*, too speculative and conjectural to be allowed.

Appeal from Emmet; Shepherd, J.   Submitted June 20, 1917.   (Docket No. 92.)   Decided December 27, 1917.

Bill by the Pellston Planing Mill & Lumber Company against Austin H. Van Wormer to set aside a sheriff's deed, to restrain defendant from entering or remaining on the premises, and for general relief. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*C. J. Pailthorp,* for plaintiff.

*Mesick & Miller,* for defendant.

FELLOWS, J.   December 10, 1914, the sheriff of Emmet county levied on premises of the present plaintiff, situated in that county, to satisfy an execution, theretofore issued out of the circuit court, upon a judgment rendered in justice's court and duly transcribed, in favor of the Rockwell Manufacturing Company. On March 30, 1915, said premises were sold at execution sale to Roy A. Darling, for the sum of $130.14, and a certificate of sale was issued to him; on January 11, 1916, he assigned such certificate to the First State Bank of Petoskey; on March 30, 1916, the bank as-

signed such certificate to Arthur B. Weyant. It is alleged in the bill that at this time $36.05 was paid to the bank by plaintiff; that Weyant furnished the balance of the money and took the assignment as plaintiff's representative, with an understanding that he should hold it for plaintiff's benefit. On June 12th, the amount due was paid to Weyant by plaintiff and he executed a receipt, which we think sufficiently describes the judgment, and which receipt was filed in the office of the register of deeds.

On September 7, 1915, the present defendant recovered a judgment against plaintiff, in the circuit court for the county of Emmet, for the sum of $1,000 and costs, which were taxed at $67.30. On September 16, 1915, execution on this judgment was levied upon the same premises of plaintiff, as was the Rockwell Manufacturing Company's execution, and, it is said, upon others. June 23, 1916, defendant paid to the register of deeds the amount of the Rockwell Manufacturing Company's execution sale, together with interest, and presented to and left with such register all the papers required by section 112, chap. 23, Act No. 314, Pub. Acts 1915 (judicature act, 3 Comp. Laws 1915, § 12927). On July 1st, the sheriff executed and delivered to defendant his deed of the premises, purporting so to do by virtue of the sale on the Rockwell Manufacturing Company execution and the proceedings taken by defendant, and thereupon defendant took peaceable possession of the premises, or at least a portion thereof, in the name of the whole.

This bill was filed to set aside the sheriff's deed, to restrain defendant from entering or remaining on the premises, and for general relief. The regularity of the proceedings, upon which both executions rest, is not assailed. The bill was dismissed and plaintiff appeals.

It is the claim of plaintiff that it had a right to re-

deem at any time within 15 months after sale; that, however, within the year after the sale it made arrangements with Mr. Weyant to advance some of the money needed to take up the Rockwell Manufacturing Company's claim and hold the certificate of sale as security; that it paid, and the holder of the certificate accepted, the full amount of the Rockwell Manufacturing Company's judgment within the 15 months, and before defendant took the steps it did to redeem as an execution creditor; that the sheriff's deed is void and should be set aside and defendant be required to respond in damages for the profits plaintiff might have made during the time defendant possessed the premises.

Defendant insists that the right of the plaintiff to redeem the premises from the execution sale ceased at the expiration of one year from the date of the sale; that thereafter the right to redeem existed exclusively in execution creditors having a levy, and that this right could not be taken away by any arrangement between the judgment debtor and senior execution creditors, or by payment and acceptance of the amount of the senior execution creditor's sale; that, by the proceedings taken by him, pursuant to the statute, he acquired the right as redemptioner to have the sheriff's deed issued to him; that it was in all regards valid and passed title to the premises; that plaintiff is not entitled to the premises, or to any damages for their being withheld.

The right to redeem from execution sales did not exist at common law but is a creature of the statute. An execution debtor has the right to redeem given him by the statute law of this State, and, so far as we have been able to find, by the statute law of all the States in the Union. As distinguished from his right to contract upon the subject of redemption, which we shall discuss later, and speaking only of his legal

right to redeem, such right depends upon legislative action, and is controlled by it. His right to redeem continues during the period fixed by the statute, and it continues no longer. *Youmans* v. *Loxley,* 56 Mich. 197 (22 N. W. 282) ; *Ross* v. *Mead,* 5 Gil. (Ill.) 171; *Campau* v. *Godfrey,* 18 Mich. 27 (100 Am. Dec. 133) ; *Cameron* v. *Adams,* 31 Mich. 426. By sections 96 and 97 of chapter 23, Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, §§ 12911, 12912), which are the re-enactment of former legislation, this period within which the execution debtor may redeem is fixed at one year from the time when the execution sale was made. By section 113 of the same chapter (3 Comp. Laws 1915, § 12928) it is provided:

"The right and title of the person against whom the execution was issued, to any real estate which shall be sold thereby, shall not be divested by such sale, until the expiration of fifteen months from the time of such sale; but if such real estate shall not be redeemed as herein provided, and a deed shall be executed in pursuance of a sale, the grantee in such deed shall be deemed vested with the legal estate from the time of the sale on such execution, for the purpose of maintaining an action for any injury to such real estate."

By this section the right and title of the judgment debtor to the real estate is not divested until the full time within which both he and execution creditors may redeem, but the period within which his right to redeem exists is fixed by the sections above referred to, and that period is not extended by section 113. The fact that the statutory period within which execution creditors may redeem was fixed at 15 months does not, in any way, modify or change the statutory period fixed within which execution debtors may redeem, but furnishes a reason for the provisions of section 113. It was within the province of the legislature to fix one period for the execution creditor and another for the execution debtor. This it has done. We conclude that

one year, and one year only, is given the execution debtor within which he may enforce his right to redeem.

But it is urged that the execution debtor and the execution creditor may make such arrangements with reference to the redemption of the premises, and may enter into such contracts with reference thereto, as they may see fit, and the contracts are enforceable. If they may contract and bind themselves with reference to the extension of time to redeem beyond the year, may they not, in the absence of an express contract in advance, after the year has expired, discharge the lien, if done before any junior execution creditor has acquired rights in it by taking the steps pointed out in the statute? We think it is clear they may. If parties may validly contract for the doing of a particular thing, they may validly do that particular thing without contracting in advance. The authorities are numerous, and we think substantially uniform, that the execution creditor and the execution debtor may bind themselves by an agreement to extend the time for redemption, and that such agreement does not fail by reason of the statute of frauds. Mr. Freeman, in his work on Executions (3d Ed.), § 316, vol. 3, p. 1859), lays down the rule in the following language:

"So, if any agreement is entered into subsequently to the sale, though by parol, the substance of which is that the purchaser, or other holder of the certificate of sale, will treat it as a mere security, or will give a definite time in which to redeem, it will be enforced. The effect of such an agreement is to prevent any effort on the part of the debtor to redeem within the time designated by the statute; and not to enforce it in his favor, when it had been the means of lulling him into inaction, would be to pervert it into a cruel and fatal decoy. This the courts will not permit, nor will they heed the plea that the contract cannot be received in evidence because within the statute of frauds."

The rule finds support in numerous cases, among

them see the following: *Schroeder* v. *Young,* 161 U. S. 334, 344 (16 Sup. Ct. 512) ; *Turpie* v. *Lowe,* 158 Ind. 314 (62 N. E. 484, 92 Am. St. Rep. 310) ; *Vannoy* v. *Martin,* 41 N. C. 169 (51 Am. Dec. 418) ; *Burt* v. *Gamble,* 98 Mich. 402 (57 N. W. 261) ; *Smith* v. *Michigan State Bank,* 102 Mich. 5 (60 N. W. 438) ; *Combs* v. *Little,* 4 N. J. Eq. 310 (40 Am. Dec. 207) ; *Griffin* v. *Coffey,* 9 B. Mon. [Ky.] 452 (50 Am. Dec. 519). In the last-cited case it is said:

"The right to redeem being a right created by law, the time for its exercise may be prolonged by the verbal agreement of the parties."

If, then, the execution creditor may validly contract to waive the statutory period of redemption we think he may waive it, and does waive it when he accepts payment of his judgment.

There is an allegation in the bill to the effect that the redemption period was extended by an arrangement between plaintiff and Weyant, but the court excluded the evidence to this effect, and it was not taken down or returned pursuant to section 5, chap. 17, Act No. 314, Public Acts 1915 (3 Comp. Laws 1915, § 12493), and is therefore not before us. But, as we have indicated, the case must be controlled by the same theory, whether the redemption was pursuant to the terms of a pre-existing contract, or arrangements then made.

The levy of the defendant was upon the lands of the plaintiff. It was not a levy upon plaintiff's right to redeem, or his right to contract with reference to such redemption. While the second levy is frequently spoken of as a levy upon the equity of redemption, cases which have the question squarely involved hold that the levy is not a levy upon the right to redeem. *Merry* v. *Bostwick,* 13 Ill. 398 (54 Am. Dec. 434), *Hamilton* v. *Hamilton,* 51 Mont. 509 (154 Pac. 717) ; *Watson* v. *Reissig,* 24 Ill. 281 (76 Am. Dec. 746). Our

statutes on the subject set the matter at rest. It provides that the defendant in the execution may redeem; his devisees, executors, and administrators, his heirs, his grantees, or his vendees of the right may redeem. Section 97, chap. 23, Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 12912). The right to redeem, therefore, passes by devise, descent, grant, or sale; and this, no matter how many executions have been levied. The parties given the right to redeem may redeem from any or all executions, and the second levy does not take away or create a lien upon such right. It therefore follows that when defendant made his junior levy it was upon the lands of the plaintiff, and not upon plaintiff's right to redeem from the first levy; that right was still free and unencumbered after the levy.

But it is urged that when defendant made his levy he acquired rights of his own; that he acquired the right by taking certain steps to redeem from the senior levy. True, he did acquire such rights, and so long as such senior levy was in existence the defendant, by taking the steps provided by the statute, might become subrogated to all the rights of the senior execution, creditor. But he must do this when such rights were in force, before they were extinguished. This he did not do. After they were extinguished by payment, acceptance thereof, and discharged, no lien or rights longer existed and there were no rights to be subrogated to. Defendant had no interest, and could have or acquire no interest in the senior execution until, and unless, he took the steps for subrogation provided in the statute. In the instant case, when those steps were taken, the senior lien and the rights thereunder had been extinguished by payment, and by a payment which, we have shown, could lawfully be made and which operated as a discharge of the lien and the indebtedness secured thereby.

We are unable to find that the plaintiff is entitled to recover damages. The premises have not deteriorated. The claim for damages grows out of prospective profits. We are very doubtful upon this record, whether the mill is in physical condition to do a profitable business. We think that the prospective profits, under the testimony in this case, are too speculative and conjectural to be allowed, within the cases of *Allis* v. *McLean*, 48 Mich. 428 (12 N. W. 640), and *Truman* v. *Machine Co.*, 169 Mich. 153 (135 N. W. 89).

It follows that the decree of the court below must be reversed and one entered here setting aside the sheriff's deed to defendant and vacating the interest of defendant acquired thereby, but not affecting defendant's lien under the execution issued upon his judgment. The plaintiff will recover costs of both courts.

KUHN, C. J., and BIRD, MOORE, STEERE, and BROOKE, JJ., concurred with FELLOWS, J.

OSTRANDER, J. (*dissenting*). The statute provision (Act No. 314, Pub. Acts 1915, chap. 23, § 101, 3 Comp. Laws 1915, § 12916), is that:

"In case the persons entitled as hereinbefore provided, shall omit to redeem the premises so sold, or any part of them, within the year above prescribed, then the interest vested in the purchaser by such sale may be acquired within three months after the expiration of such year, by the persons, and on the terms hereinafter prescribed."

The thing which may be acquired is *the interest vested in the purchaser by such sale.* This interest, "the title of the original purchaser," may be in turn acquired from his vendee or grantee by purchase by any other creditor who might have acquired it originally. Section 106 (§ 12921).

In this case the year expired March 30, 1916.  The certificate evidencing the title of the original purchaser at execution sale was then held by Arthur B. Weyant, assignee of the State Bank of Petoskey, which was assignee of the purchaser at the execution sale.  Left in his hands, no creditor seeking the right which the statute gave him, the holder of the certificate would have been entitled to a deed from the sheriff, and any junior levy on the premises would have been extinguished.  There was no redemption by the owner of the land within the year.  In consequence, the interest vested in the purchaser at the sale might thereafter be acquired by the defendant here, and it was acquired.  No right of the plaintiff was thereby invaded.  Its right to redeem had expired.  Undoubtedly, as between the purchaser at execution sale and his debtor, the owner of the land, an arrangement binding them only may be made, extending the time for payment of the debt.  If the purchaser, during the year, agrees to accept his money after the year has expired, he ought to be bound.  The reasons are stated by Mr. Freeman and set out by Mr. Justice FELLOWS in his opinion.  But such an arrangement cannot affect the statute right of a creditor entitled, after the year, *to acquire the interest vested in the purchaser at such sale.*  Otherwise, a right created by the statute is taken away by an arrangement between the execution purchaser and his debtor.  The reasoning which will so defeat the right of junior creditors when payment of the debt is made after the year has expired will defeat it, if an arrangement to pay, not executed, is made by the execution purchaser and the debtor owner.  The reasoning indulged by my Brother FELLOWS cannot be confined to a case in which payment is made after the year and before the junior creditor has exercised his right.  The junior creditor's *right* does not depend upon its exercise on a particular day during the three

months' period. His *right* is a right to acquire the title of the original purchaser at any time within three months after the expiration of the year.

In my opinion, the decree below is right and should be affirmed.

STONE, J., concurred with OSTRANDER, J.