**APOSTOLIC PENTECOSTAL CHURCH, Plaintiff,**

v.

**Clyde L. COLBERT, Sr., Emanuel Missionary Temple d/b/a C & L Builders, Inc., and C & L Builders and Investors, Defendants.**

**Civil Action No. 94–40577.**

United States District Court,
E.D. Michigan,
Southern Division.

May 23, 1997.

---

Robert J. Hahn, Cummings, McClorey, Farmington Hills, MI, for Apostolic Pentecostal Church.

Thomas J. Pereira, Southfield, MI, for Clyde L. Colbert, Sr., Emanuel Missionary Temple, C and L Builders and Investors, New Birth Apostolic Church.

C. Edward Hildebrandt, Vandeveer Garzia, Detroit, MI, John J. Lynch, III, Edward A. Khoury, Khoury & Kassab, Birmingham, MI, for Huntington Banks of Michigan.

Jason A. Waechter, Southfield, MI, for Baylor, Limited.

Thomas J. Pereira, Southfield, MI, Valerie A. Colbert–Osamuede, Detroit City Law Department, Detroit, MI, for Detroit Community Focus.

### OPINION AND ORDER REJECTING MAGISTRATE JUDGE SCHEER'S FEBRUARY 19, 1996 REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO QUASH WRIT OF EXECUTION

GADOLA, District Judge.

In June, 1994, Apostolic Pentecostal Church ("Apostolic") obtained a judgment against Emanuel Missionary Temple ("Emanuel") and others in the amount of $1,149,-810.00. Apostolic certified the judgment to this court on July 21, 1994 and commenced enforcement proceedings. Since that time, a

number of writs of garnishment and writs of execution have been issued and challenged.[1] Currently before this court is a motion filed by Emanuel on November 22, 1996 to challenge a writ of execution against property commonly known as "16534 Ilene" in Detroit, Michigan.

## FACTS

The writ at issue here was drafted by Apostolic's attorneys on a boilerplate form (Form INT-0128-MIE-11/91). It was signed by the clerk of this court on March 15, 1995 and presented to the Wayne County Sheriff's Court Division for execution on April 3, 1995.[2]

Prior to completing this form writ of execution, Robert Hahn, counsel for Apostolic, contacted the United States Marshal's Office in this district to serve and process it. The supervising deputy United State Marshal in charge of the administration of writs of execution based upon federal judgments refused to do so. He instructed Hahn to secure the aid of the Wayne County Sheriff's Department—the sheriff's department of the county where the property sought to be levied was located.

Three days after presenting the writ to the Wayne County Sheriff's Department, the Department recorded a "Notice or Certificate of Levy on Execution" pertaining to five parcels. A sale of the five parcels was set for July 27, 1995 and a "Notice of Sale of Real Estate Under Execution" was published.

Apostolic subsequently decided to sell only three parcels as opposed to five parcels. Accordingly, the Wayne County Sheriff adjourned the sale until August 31, 1995, and issued a "Notice of Adjournment of Sale," together with a corrected advertisement.

The sale was performed on August 31, 1995. Apostolic was the successful bidder on two of the three properties sold. The third parcel (a.k.a. "the Ilene property"), which is the subject of the instant motion to quash, was purchased by Baylor Ltd. ("Baylor") on a bid of $15,001.00.[3]

A "Sheriff's Certificate of Sale of Land on Execution" was prepared for the Ilene property purchased by Baylor. Yet, it contained two clerical errors.[4] First, it listed *Apostolic* instead of Baylor as the successful bidder, and second, it listed the bid amount as *$15,-000.00* instead of $15,001.00.

On November 18, 1996, Emanuel filed the instant motion to quash. Emanuel argues that the writ should be quashed because it was erroneously served by the Wayne County Sheriff. According to Emanuel, Federal

1. For instance, a writ of garnishment was directed to Huntington Banks of Michigan ("Huntington Banks") on January 11, 1995. Huntington Banks by intervenor, filed a motion on February 22, 1995, challenging this writ on jurisdictional grounds. In a Report and Recommendation ("R & R") dated April 29, 1996, Magistrate Judge Donald A. Scheer urged this court to quash the writ of garnishment. But, in an opinion and order dated February 18, 1997, this court rejected Judge Scheer's R & R and denied Huntington Bank's *motion to quash writ of garnishment.* This court recently certified an interlocutory appeal on Huntington Bank's motion to quash writ of garnishment.

2. The writ was directed to "ANY SHERIFF, DEPUTY SHERIFF, OR DEPUTY U.S. MARSHALL" and authorized such person(s) to seize and sell certain real property of Emanuel in accordance with the law.

3. On the date of sale, Baylor tendered the purchase money to the Wayne County Sheriff's Department and on September 11, 1995, the Department, in turn, tendered all but $1.00 to counsel for Apostolic. Apostolic's counsel has since forwarded the funds in the amount of $15,-000 to its client.

4. The clerical mistakes were discovered on or about November 20, 1996—two days after Emanuel filed the instant motion to quash and eleven days before the statutory fifteen month period of redemption expired which would entitle the purchaser of the property, Baylor Ltd. ("Baylor"), to a Sheriff's Deed under Section 600.6069 of the Michigan Compiled Laws. Upon learning of the errors, the Wayne County Sheriff's Department prepared an "Amended Sheriff's Certificate of Sale of Land on Execution." This amended document has not yet been recorded nor has it been tendered to Baylor, however, due to a temporary restraining order ("TRO") issued on November 26, 1996, which *inter alia,* enjoined the Wayne County Sheriff's Department from issuing a Sheriff's Deed for the subject property until after the hearing on Emanuel's motion to quash. By agreement of the parties, the TRO was extended until such time as this court finally rules on Emanuel's motion to quash.

Rules of Civil Procedure 4.1(a) [5] and 69(a) [6] as well as 28 U.S.C. § 566(c) [7] require the writ to be served by a "United States marshal, a deputy United States marshal, or a person specially appointed for that purpose."

On February 19, 1997, Magistrate Judge Scheer issued a R & R advising this court to quash the writ of execution. Among other things, he found that the Sheriff of Wayne County had no valid authority to levy upon and offer for sale the real estate of Emanuel. According to Magistrate Judge Scheer, Federal Rule of Civil Procedure 69(a) requires writs of execution to be served in accordance with the method and manner provided by Federal Rule of Civil Procedure 4.1(a). And, Rule 4.1(a) requires service by a "United States marshal, a deputy United States marshal, or a person specially appointed for that purpose." [8]

Baylor, an interested and intervening third-party [9] filed a host of objections to the Magistrate's R & R. Chief among them are: (1) the writ was executed in accordance with federal and state law; (2) the doctrine of laches bars Emanuel from bringing the instant motion, and (3) Emanuel will be unjustly enriched if the motion to quash is granted. Upon review of the relevant authorities and the arguments proffered by the parties, this court finds that it cannot adopt Magistrate Scheer's R & R.

## DISCUSSION

■ This court rejects Magistrate Judge Scheer's R & R for three reasons. First, this court rejects Magistrate Judge Scheer's February 19, 1997 R & R for the reasons discussed at pages 9–23 of this court's February 18, 1997 order rejecting Magistrate Judge Scheer's April 29, 1996 R & R and denying Huntington Banks' motion to quash writ of garnishment for insufficiency of service. In short, this court finds that construing Federal Rule of Civil Procedure 69(a) to require execution of the writ and levy on the property in accordance with the manner prescribed by Rule 4.1(a) governing service of process contradicts the plain language and undermines the central purpose of Rule 69(a). Rule 69(a), in this court's opinion, expressly sanctions execution of the writ in this case by the Wayne County Sheriff since that mode of "execution [is] in accordance with the practice and procedures of [Michigan,] the state in which the District Court is held." Fed. R. Civil P. 69(a). Under Michi-

5. Federal Rule of Civil Procedure 4.1(a) provides in pertinent part that "[p]rocess other than a summons as provided in Rule 4 or subpoena as provided in Rule 45 shall be served by a United States marshal, a deputy United State marshal, or a person specially appointed for that purpose, who shall make proof of service as provided in Rule 4(1)."

6. Rule 69(a) reads in relevant part as follows:
Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

7. Title 28, section 566 of the United States Code provides that "[e]xcept as provided by law or rule of procedure, the United States Marshals Service shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties."

8. In reaching his conclusion, Magistrate Judge Scheer was persuaded by *Schneider v. National Railroad Passenger Corp.*, 72 F.3d 17, 19 (2d Cir.1995).

9. Baylor characterizes itself as an "intervening party." Yet, this court has never issued an order sanctioning Baylor's intervention under Federal Rule of Civil Procedure 24. Notwithstanding the lack of a formal order permitting Baylor to intervene, this court treats Baylor as a intervening party under Federal Rule of Civil Procedure 24. Undoubtedly, Baylor has a significant interest in this motion to quash writ of execution. Moreover, not one of the parties involved in this motion have objected to Baylor's appearance or its characterization of itself as an "intervenor." There has been ample opportunity to voice such an objection, as counsel for Baylor has actively participated in this litigation by filing pleadings, appearing at the TRO hearing on November 26, 1996, conducting the direct and re-direct examinations of the Supervisory Deputy with the U.S. Marshal's Service on February 11, 1997, and conducting oral argument before the Magistrate Judge on February 11, 1997.

gan law, executions to collect a judgment "in any court" may be "issued to the sheriff ... of any county." Mich. Comp. Laws § 600.6001.

■ Moreover, this court finds that 28 U.S.C. § 566(c) does not require the United States Marshal to serve all writs of execution in supplementary proceedings. Section 566(c) provides that "[e]xcept as otherwise provided by law or **Rule of Procedure**, the United States Marshals Service shall execute all lawful writs...." As stated above, Rule 69(a) requires service in accordance with Section 600.6001 of the Michigan Compiled Laws, and thus service in this case clearly constitutes an exception to the general rule in Section 566(c). Accordingly, 28 U.S.C. § 566(c) does not require this court to quash the writ.

■ The second reason that this court rejects Magistrate Judge Scheer's recommendation to quash the writ is because this court finds that the doctrine of laches militates against such an action. This court is in agreement with Baylor, the purchaser of the property, that Magistrate Judge Scheer should have found the defense applicable in this case.[10]

"The defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted,[11] and (2) prejudice to the party asserting the defense.'" *Kansas v. Colorado*, 514 U.S. 675, 687, 115 S.Ct. 1733, 1742, 131 L.Ed.2d 759 (1995) (cit-

ing *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)). *See also Cleveland Newspaper Guild v. Plain Dealer Publishing Co.*, 839 F.2d 1147, 1153 (6th Cir.), *cert. denied,* 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 234 (1988).[12] Undeniably, the first element of the doctrine is present here. Emanuel slumbered on its right to challenge the writ and filed the instant motion to quash indefensibly late. The motion was filed nearly *eighteen months* after the asserted defect in the proceedings supplemental to judgment should have been known to Emanuel. More incredibly, the motion was filed *nine months* after Huntington Banks of Michigan ("Huntington Banks") filed a virtually identical motion to quash a writ of garnishment. Emanuel was present during the proceedings regarding Huntington Banks' motion to quash, and thus should have filed its motion to quash in tandem with Huntington Banks' motion, or at the very least, soon after receiving Magistrate Judge Scheer's April 29, 1996 R & R favorable to it's position.[13] Having not done so, this court finds that it has waived its right to do so now.

The dilatoriness of this motion is exemplified by the fact that Emanuel filed its motion to quash on November 18, 1996 *after* the running of the statutory period of redemption on September 1, 1996.[14] Under Michigan law, the "person against whom the execution is issued, and whose right and title was sold in pursuance thereof" is allotted *one year* from the date of sale to redeem. Mich.

---

**10.** Indeed, Magistrate Judge Scheer struggled with this issue of whether Emanuel waived its entitlement to the relief prayed in its motion to quash. In his R & R, Judge Scheer stated that such an argument was "not easily dismissed."

**11.** In regard to the first element, the Supreme Court has held "[t]hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case." *The Key City*, 81 U.S. 653, 660, 20 L.Ed. 896 (1871).

**12.** *Abraham v. Ordway*, 158 U.S. 416, 15 S.Ct. 894, 39 L.Ed. 1036 (1895) (holding that the doctrine is applicable to litigation involving land).

**13.** It is especially significant that Emanuel did not file its motion to quash until nine months after Huntington's motion to quash considering that Emanuel had to undertake essentially *no* research at all prior to filing its motion to quash. Huntington had previously done all the research for it. This is evident from a comparison of Emanuel's and Huntington Banks' briefs. Basically, Emanuel in its brief, wholly adopts the arguments Huntington Banks made in its brief. In fact, Emanuel even characterizes its motion to quash a "companion motion" to Huntington Banks' motion to quash presumably for this reason.

**14.** Although the expiration of the redemption period is not directly relevant to the merits of the motion, it certainly is relevant in assessing the lack of diligence and the equities of the situation.

Comp. Laws § 600.6062.[15] *See also Burley v. Flint,* 105 U.S. 247, 26 L.Ed. 986 (1881) (holding that a party seeking to redeem must to so within the period prescribed by statute). To preserve the expectations of Baylor in receiving the Sheriff's Deed to the property and to further the purposes of the one-year statutory period of redemption (e.g.repose), Emanuel, having lost its right to redeem should be forever precluded from asserting that right.

Emanuel takes the untenable position that it did not "sit" on its redemption rights. Emanuel insists that throughout the redemption period it was actively negotiating for redemption of "16534 Ilene" with Apostolic, whom it thought to be the purchaser. Had it known that Baylor was the purchaser, Emanuel asserts that it would have negotiated with Baylor for return of the property. Thus, Emanuel feels it is entitled to another opportunity to negotiate for redemption of the property now that the true identity of the purchaser has been revealed to it. Such an argument is wanting for the plain reason that it was not necessary for Emanuel to negotiate with Baylor, the purchaser of the property in order to redeem it. To be sure, Emanuel did not even have to know Baylor's identity to successfully redeem. To redeem, all Emanuel need have done was pay the Register of Deeds the appropriate sum of money within the statutory period. This it did not do.[16]

Not only is Emanuel's delay in bringing the instant motion to quash inexcusable, but if the motion is granted Baylor will suffer severe prejudice—the second requirement of the doctrine of laches. Baylor, an innocent third-party, will lose the benefit of its bargain. As of September 1, 1996, after the running of the one-year statutory period of redemption, Baylor had an expectation interest in taking possession of and receiving a Sheriff's Deed to the property on December 1, 1996.[17] Baylor's expectation interest should not now be defeated by the instant motion to quash filed extremely and inexcusably late by Emanuel.

A third reason [18] that this court denies the motion to quash is that this court

**15.** The statutory period of redemption for execution creditors (e.g.Apostolic) is three months longer than for execution debtors (e.g.Emanuel). Mich. Comp. Laws § 600.6063(2) ("Any creditor of a person against whom the execution issues having in his own name, or as assignee, representative, trustee, or otherwise, a judgment under which execution has issued and levied upon the real estate sold, or a judgment which is a lien without execution and levy, or any purchaser at a subsequent sale under a junior levy whose title has not become absolute, at any time before the expiration of 15 months from the time of sale, by paying the sum of money which was paid on the rate borne by the judgment under which the sale was made, from the time of the sale, shall acquire the rights of the original purchaser, subject to be defeated in the manner hereinafter mentioned.") See also *Pellston Planing Mill & Lumber Co. v. Van Wormer,* 198 Mich. 648, 165 N.W. 724 (1917) (holding that the execution debtor could redeem within *one year* from the date of sale despite the fact that execution creditors had a *fifteen month* redemption period and that the execution debtor would not be divested of his title until expiration of that *fifteen month* period).

**16.** From a review of the transcript of the February 11, 1997 proceedings it appears that all parties seem to agree that if Emanuel redeemed the three parcels, Apostolic could once again execute on them unless Emanuel and Apostolic reached a "no re-execution agreement." (Feb. 11, 1997 Tr. at 41–42). Emanuel supposedly sought such an agreement from Apostolic, but was unsuccessful. In fact, it was not until after negotiations with Apostolic over a "no re-execution agreement" came to an impasse that Emanuel filed the instant motion to quash.

Subsequent to Emanuel's filing this motion, Apostolic and Emanuel reached a "no re-execution" agreement regarding two of the three properties sold on August 31, 1995. In particular, the parties seemingly reached some sort of agreement which permits Emanuel to purchase back all property except for the Ilene property, without being subject to a second writ of execution by Apostolic.

**17.** This motion was filed a mere *10 days* from the date Baylor was to receive a deed to the subject property on December 1, 1996. Yet, for all intents and purposes Baylor's expectation interest in receiving title and possession to the property was realized not on December 1, 1996, but rather on September 1, 1996. This is because Emanuel (the only party who seems to have any interest in redeeming) did not redeem by September 1, 1996, but was required to do so pursuant to a twelve-month statutory period of redemption applicable to execution debtors.

**18.** This third ground is based on the assumption that Federal Rules of Civil Procedure 4.1 and 69(a) require that a marshal, rather than a sheriff, serve the writ of execution.

finds non-compliance with Rule 4.1 to be "harmless error" under Federal Rule of Civil Procedure 61. Federal Rule of Civil Procedure 61 provides that:

> No error in either the admission or the exclusion of evidence and *no error or defect* in any ruling or order *or in anything done or omitted by the court or by the parties is ground for* granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise *disturbing a judgment or order,* unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

(emphasis added).

Here, assuming that service of the writ by the Wayne County Sheriff was defective, such defect most certainly did not affect the substantial rights of the parties. Indeed, Emanuel was not at all prejudiced by the Wayne County Sheriff's service of the writ.[19] Emanuel not only had constructive knowledge of the sale through publication by the Wayne County Sheriff in the Legal Advertiser, but it also had actual knowledge of the sale. The sale was conducted in a commercially reasonable manner, and Baylor was a bona fide purchaser that paid fair and equivalent consideration for the property. Moreover, both Apostolic and Emanuel have benefited from the sale. Apostolic has benefited because it has received a check for $15,000 from the Wayne County Sheriff's Department. Emanuel has benefited because it has had the judgment against it reduced by the amount of Baylor's bid. Clearly, under the circumstances of this case, any non-compliance with Rule 4.1 would be "harmless error."[20]

For all the foregoing reasons, this court rejects Magistrate Judge Scheer's February 19, 1997 R & R and denies Emanuel's motion to quash writ of execution.

### ORDER

**IT IS HEREBY ORDERED** that EMANUEL MISSIONARY TEMPLE'S motion to quash writ of execution is **DENIED**.

**IT IS FURTHER ORDERED** that the November 26, 1996 temporary restraining order is **VACATED**.

**IT IS FURTHER ORDERED** that BAYLOR, LTD. is the legal owner of 16534 Ilene Street, Detroit, Michigan.

SO ORDERED.

---

19. It should be noted that if this motion to quash is granted, Apostolic has assured the court that it will re-execute on the property. (Transcript of Feb. 11, 1997 hearing, at 45). This will cost Apostolic, as well as the federal and state government, a significant amount of needless time, energy and expense. It will also afford Emanuel an additional fifteen months to reside at the property.

20. A different way to reach the same result would be to hold that Emanuel waived its objection to service of the writ under Federal Rule of Civil Procedure 1. Allowing Emanuel to bring the motion to quash at such a late date would periously undermine the principles of equity and fairness embodied in that rule (all Rules should be construed to "secure the just, speedy, and inexpensive determination of every action"). *Compare Schneider v. National Railroad Passenger Corp.,* 72 F.3d 17, 19 (2d Cir.1995) (holding that movant did not waive its objection to service of the writ of execution; motion was filed within days after service of the writ). This court is in accord with Baylor that "[t]his case is the poster child for Rule 1." (Transcript of February 11, 1997 hearing, at 35).