## ABRAHAM *v.* ORDWAY.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 274. Submitted April 5, 1895. — Decided May 20, 1895.

Independently of any limitation for the guidance of courts of law, equity, may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done in the particular case by granting the relief asked.

This case is peculiarly suited for the application of this principle, as the plaintiffs claim that the lands in dispute became, after the divorce of Elizabeth Abraham from Burnstine, her legal and statutory as distinguished from her equitable separate estate, and that the trust deed to Norris, by sale under which the defendant acquired title, was absolutely void, while it appears that nineteen years elapsed after the execution of that deed before this suit was brought, that Elizabeth Abraham was divorced from her second husband thirteen years before the institution of these proceedings, that she paid interest on the debt secured by the trust deed for about eight years without protest; that she did not pretend to have been ignorant of the sale under the trust deed, nor to have been unaware that the purchaser went into possession immediately, and continuously thereafter received the rents and profits; and on these facts it is held that the plaintiffs and those under whom they assert title have been guilty of such laches as to have lost all right to invoke the aid of a court of equity.

The case is stated in the opinion.

*Mr. H. O. Claughton* and *Mr. Franklin H. Mackey* for appellants.

*Mr. J. J. Darlington* for appellees.

Mr. Justice Harlan delivered the opinion of the court.

On the 22d day of May, 1869, Bernard Burnstine — his wife Elizabeth uniting with him in the deed — conveyed to Levi Abraham certain real estate in the city of Washington in trust for the sole and separate use of the wife, with power in her at any time to dispose of the property in whole or in part, or to encumber it by deed or by will, or by other instrument in the nature of a last will and testament.

The deed provided that the trustee should permit the wife, her executors, administrators, and assigns, to have, hold, use, possess, and enjoy the trust property; to receive its rents, issues, and profits as if she were a *feme sole;* and if she disposed of it the trustee was not to be responsible therefor, nor for the application of its proceeds.

The deed upon its face recites that it was made pursuant to a mutual agreement between the grantors to live separately and apart from each other during their lives.

Subsequently, on the 10th of May, 1870, Mrs. Burnstine obtained a divorce, and shortly thereafter, June 24, 1870, married one Solomon Caro.

On the 24th of September, 1870, Mrs. Caro executed to Harriet Ordway a promissory note for $3000 payable in two years from that date, with interest at 10 per cent. To secure its payment, Levi Abraham, the trustee in the Burnstine deed — Mrs. Caro uniting with him — executed to John E. Norris, trustee, a deed covering the above real estate. This deed recited that the note was given to secure the just indebtedness of Mrs. Caro to Harriet Ordway. But the bill alleges and the demurrer admits that it was, in fact, given for money borrowed from the payee by Solomon Caro. This last deed was in trust that Mrs. Caro, her heirs and assigns, should have, hold, use, and enjoy the premises, and their rents, issues, and profits to take, receive, and apply to her own use until some default or failure occurred in the payment of the debt or some part of the debt due to Mrs. Ordway. It also provided

that upon the written request of the latter, as the legal holder of the above note, the trustee should proceed to sell and dispose of the premises, or so much thereof as might be deemed necessary, at public sale to the highest bidder, upon such terms and conditions as the trustee deemed best for the interest of all parties concerned, giving due notice of sale.

On the 21st of December, 1874, Elizabeth Caro joined with Levi Abraham in a deed conveying the real estate in question to Esther Rebecca Abraham in fee.

Caro having abandoned his wife, she obtained from the Supreme Court of the District of Columbia, on the 20th of October, 1876, a decree of divorce and a restoration of her maiden name of Elizabeth Abraham. The latter paid interest on the above note for about eight years. But having ceased to make such payments, the property was sold at public auction on the 6th of January, 1879, pursuant to the terms of the Norris deed of trust; and on the same day Norris executed to Mrs. Ordway, the purchaser, a deed conveying to her the property in fee. After this purchase, Mrs. Ordway took possession of the property, and received the rents and profits thereof.

Elizabeth Rebecca Abraham, the grantee in the deed of December 21, 1874, died August 10, 1886, intestate, leaving the appellants as her only heirs at law.

Levi Abraham, the trustee, died on the 28th of April, 1876. Norris died on the 4th day of February, 1887.

The appellants brought this suit upon the theory that the above note having been executed by Elizabeth Abraham while she was a married woman, the wife of Caro, was void; that the deed of trust to Norris was, for that reason, of no effect as security for its payment; and that the conveyance by Norris to Mrs. Ordway created a resulting trust for the benefit of the plaintiffs.

The prayer of the bill was for a decree requiring the defendant Harriet Ordway to convey all her right, title, and interest in the estate in question to the plaintiffs, and account to them for rents and profits.

The defendants demurred upon the ground that the plain-

tiffs did not by their bill present a case entitling them to relief in a court of equity. The demurrer was sustained and the bill dismissed. That decree was affirmed in the general term.

After the decree below was perfected, the defendant Harriet. Ordway died, and the present appellees are her devisees.

Counsel express gratification that an opportunity is presented in this case for the construction of what is known as the Married Woman's act of April 10, 1869, in force in the District of Columbia, particularly the section providing that " any married woman may contract and sue, and be sued in her own name, in all matters having relation to her sole and separate property, in the same manner as if she were unmarried." Rev. Stat. Dist. Col. § 729.

We do not deem it necessary at this time to consider the scope of that act, nor to determine whether it was correctly interpreted in *Schneider* v. *Garland*, 1 Mackey, 350. The case can be disposed of upon a ground that does not involve the construction of that statute, and which cannot be ignored, whatever conclusion might be reached as to the power of Elizabeth Abraham, while she was the wife of Solomon Caro, to charge the estate in question with the payment of the $3000 note. That ground is, that the plaintiffs and those under whom they assert title have been guilty of such laches as to have lost all right to invoke the aid of a court of equity. Nearly nineteen years elapsed after the execution of the deed to Norris before the present suit was brought. And although the plaintiff Elizabeth was the wife of Caro when that deed was made, she was divorced in 1876, nearly thirteen years before the institution of these proceedings. She paid interest on the debt of $3000 for about eight years, without, so far as the bill discloses, protesting that she was not legally bound to do so. Some of those payments must have been made after her divorce from Caro, and while she was an unmarried woman. She did not pretend to have been ignorant of the public sale, under the Norris deed, at which Mrs. Ordway purchased the property at the price of twenty-seven hundred and fifty dollars. Nor did she pretend to have been unaware,

at the time, of the fact that Mrs. Ordway, after her purchase, went into possession and continuously received the rents and profits of the estate

It appears also on the face of the bill that in 1874 Levi Abraham and the plaintiff Elizabeth, then Elizabeth Caro, conveyed this property to Esther Rebecca Abraham. Whether this deed was recorded or not the bill does not state. But the grantee in that deed did not die until August 10, 1886, nearly twelve years after the conveyance to her, nearly seventeen years after the date of the deed to Norris, and more than seven years after the sale and conveyance to Mrs. Ordway under that deed. It does not appear that Esther Rebecca Abraham, in her lifetime, ever disputed the title acquired by Mrs. Ordway under the sale made by Norris, trustee. No explanation is given in the bill of her failure to bring suit.

The property in dispute, it may well be assumed, has greatly appreciated in value since Mrs. Ordway's purchase, which was more than ten years prior to this suit. It is now too late to ask assistance from a court of equity. The relief sought cannot be given consistently with the principles of justice, or without encouraging such delay in the assertion of rights as ought not to be tolerated by courts of equity. Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law. *Wagner* v. *Baird*, 7 How. 234, 238; *Harwood* v. *Railroad Co.*, 17 Wall. 78, 81; *Sullivan* v. *Portland &c. Railroad*, 94 U. S. 806, 811; *Brown* v. *County of Buena Vista*, 94 U. S. 157, 159; *Hayward* v. *National Bank*, 96 U. S. 611, 617; *Lansdale* v. *Smith*,

106 U. S. 391, 392; *Speidel* v. *Henrici,* 120 U. S. 377, 387; *Richards* v. *Mackall,* 124 U. S. 183, 188.

The present suit is peculiarly one for the application of this principle. The contention of the appellants is that under the Married Woman's act of 1869 the lands in question became, after the divorce of the plaintiff Elizabeth from Burnstine, her legal and statutory, as distinguished from her equitable, separate estate, and that the deed to Norris which secured the $3000 note was absolutely void, because that note was not given by Mrs. Caro in respect of any matter "having *relation* to her sole and separate property." Rev. Stat. Dist. Col. § 729. It is conceded that if that note, in fact, and within the meaning of that act, had "relation" to the estate here in dispute, then the Norris deed was valid as security for the debt evidenced by the note. But whether the debt was of that character depended — unless the recitals in the Norris deed on that point are not in themselves conclusive — upon such proof, in respect to the origin of the debt and its relation to the estate conveyed by that deed, as could be made, after nearly twenty years had elapsed from the date of the deed, and after the death both of Levi Abraham, the grantor, and of Norris, the grantee. One of the grounds upon which courts of equity refuse relief where the plaintiff is guilty of laches is the injustice of imposing upon the defendant the necessity of making proof of transactions long past, in order to protect himself in the enjoyment of rights which, during a considerable period, have passed unchallenged by his adversary, with full knowledge of all the circumstances. The principle has been thus stated by this court: "Length of time necessarily obscures all human evidence, and deprives parties of the means of ascertaining the nature of original transactions; it operates by way of presumption in favor of the party in possession. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor." *Wagner* v. *Baird,* 7 How. 258.

The appellants insist that, as this suit relates to land, the doctrine of laches, as announced in the above cases, has no application.   There is no foundation in the adjudged cases for this suggestion.   It is true, as stated by counsel, that in *Wagner* v. *Baird*, just cited, the court says that in many cases courts of equity "act upon the analogy of the limitations at law; as where a legal title would in ejectment be barred by twenty years' adverse possession," and "will act upon the like limitation, and apply it to all cases of relief sought upon equitable titles, or claims touching real estate."   But it proceeds to say : "But there is a defence peculiar to courts of equity, founded on lapse of time and the staleness of the claim, where no statute of limitations distinctly governs the case.   In such cases courts of equity often act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights, or long acquiescence in the assertion of adverse rights.   2 Story Eq. § 1520.   A court of equity will not give relief against conscience or where a party has slept upon his rights."

*Allore* v. *Jewell*, 94 U. S. 506, is also cited by appellants. That was a suit to cancel a conveyance of land upon the ground that the grantor was incapable from mental weakness of comprehending the nature of the transaction.   Six years elapsed before suit, and it was objected that the suit could not for that reason be maintained.   The court said that there was no statutory bar in the case, and the relief asked was granted because, under the particular circumstances of that case, application for relief must be held to have been seasonably made, and because the facts justified the cancellation of the deed.

Counsel rely with some confidence upon the following observations in *Wehrman* v. *Conklin*, 155 U. S. 314, 326 : "If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed.   If the statute limits him to twenty years, and he brings his action after the lapse of nineteen years and eleven months, he is as much entitled as matter of law to maintain it as though he had brought it the day after his

cause of action accrued." That this court did not intend to lay down any such rule as the appellants contend for, is quite evident from the following sentences, not quoted by them, but which immediately precede those above quoted : " It is scarcely necessary to say that complainants [in the equity suit] cannot avail themselves *as a matter of law* of the laches of the plaintiff in the ejectment suit. Though a good defence in equity, laches is no defence at law."

The claim of the appellants is without merit, and the decree is

*Affirmed.*