## BUCHLER v. BLACK et al.

### (Circuit Court of Appeals, Ninth Circuit. October 4, 1915.)

### No. 2572.

1. EQUITY ⬤274—PLEADING—BILL—AMENDMENTS.
   Where complainant filed an amendment waiving relief prayed on the ground of the invalidity of the foreclosure proceedings, and prayed only that the purchasers be decreed to hold as trustees, he impliedly affirmed the legality of the purchasers' title.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. § 566; Dec. Dig. ⬤274.]

2. MORTGAGES ⬤516—FORECLOSURE—PURCHASERS.
   On foreclosure, a mortgagee may buy in the property sold by the receiver.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1518; Dec. Dig. ⬤516.]

3. CORPORATIONS ⬤312—PURCHASERS—FORECLOSURE SALE.
   A trustee and general manager of a mining corporation, who did his utmost to stave off foreclosure of a mortgage, may, the mortgage having been foreclosed, bid in the property at sale.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1376–1386, 1388–1392; Dec. Dig. ⬤312.]

4. CORPORATIONS ⬤209—STOCKHOLDER'S ACTION—LACHES—WHAT CONSTITUTES.
   Where the trustee and general manager of a mining corporation, in conjunction with the mortgagee, acquired the corporate property at foreclosure sale, shareholders who had knowledge of the purchase cannot, three years thereafter, the purchasers having expended large sums in developing the property, demand that they hold it in trust for the benefit of the corporation for particularly in cases of such property is active diligence required.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 806, 807; Dec. Dig. ⬤209.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Bill by G. J. Buchler against W. W. Black and others. From a decree for defendants (213 F. 880), complainant appeals. Affirmed.

The Sunset Copper Mining Company was a corporation organized under the laws of Washington, and owned several mining claims in that state. It

had a board of five trustees, one of whom was Judge Black, residing in the state of Washington. The other four, one of whom was the president, resided at Glens Falls, in the state of New York. In 1904 and 1905 the corporation had obtained loans from Ellen C. Baldwin, of New York, in the sum of $29,-384.10, which it used in improving its property, and to secure which it had given its mortgages. The mortgages were assigned to Bell. In 1907 Bell threatened to foreclose the mortgages unless the other stockholders would pay their proportion of the money due for the annual assessments upon the mining properties. Black, who was opposed to foreclosure, went to New York and obtained from Bell an agreement to withhold foreclosure for a year. At the end of that year, Black having been unable to provide for the payment of the mortgage debt, Bell prepared and sent to all the stockholders, including the appellant herein, a circular setting forth the condition of the company, its debts, and its need of money to do assessment work and obtain patents, and stating that the company was in danger of losing its property, and offering on his part to advance his pro rata if other stockholders would do the same, and calling attention to the fact that a receivership was threatened. He received practically no response to the circular. He thereupon wrote to Black, asking him to give him the name of a local attorney to act for him in foreclosing the mortgages. Black sent him the names of several attorneys, and out of the list Bell employed Mr. Sandidge, and thereupon started his action in the superior court of Snohomish county, Wash., of which court Black was the judge. In his complaint Bell set forth the necessity of doing the assessment work in order to hold the mining claims and the danger of losing the properties, alleged that the company was wholly insolvent, and prayed for the appointment of a receiver, and that the receiver be authorized and directed to sell the whole or such portion of the property as might be necessary to pay the indebtedness of the corporation. He also alleged facts sufficient to authorize the foreclosure of·the mortgages. Black was also a creditor of the corporation in the sum of $10,923.21, as well as a trustee and a stockholder. The complaint and summons were served upon the president of the company in New York, who acknowledged in writing that "due and timely service" was made upon the corporation. He acknowledged, also, due and timely service of a notice of the application for the appointment of a receiver, in which notice it was said that on December 9, 1908, or as soon thereafter as counsel could be heard, the application would be presented to the court. Black, being interested in the litigation, was disqualified to hear the suit. A neighboring superior judge was called in for that purpose, and on December 10, 1908, he appointed Fogarty receiver. On January 30, 1909, a further order was made appointing Fogarty permanent receiver, and ordering that the bond theretofore given by Fogarty as temporary receiver be continued and remain in force as his bond as permanent receiver. Black employed an attorney, D. W. Locke, to appear for and represent the corporation in the foreclosure suit, and Locke made formal appearance for the company and represented it upon the trial, which was had on January 30, 1909, and on February 20, 1909, he appeared and represented the company on the application of the receiver for an order in the course of the receivership, and again he appeared for the corporation on April 5, 1909, when the order was made confirming the sale of the property by the receiver, which had been sold on March 20, 1909, to Black and Bell for $40,000; the total indebtedness of the corporation at that time being about $64,000.

Three years after the date of the sale, the appellant herein filed in the court below the present suit against Black and Bell and the Sunset Copper Mining Company, praying that the proceedings had in the state court be declared null and void, and that they be set aside and canceled; that the receiver's sale to Black and Bell be set aside and canceled; that an investigation be made as to the merits of all claims against the corporation, and that an accounting be had of the moneys received and expended by Black and Bell while they acted as trustees of the corporation, and that, if necessary, the property of the corporation be sold to pay the bona fide debts; and that Black and Bell be declared to be trustees for and on behalf of the corporation and its stockholders, and be declared to hold all of said properties

as trustees for the use and benefit of the corporation and for its bona fide creditors and stockholders. Thereafter the bill was amended so as to omit all prayer for relief on the ground of the alleged invalidity of the receiver's sale, so that on the amended bill the only question presented to the court below was whether or not Bell and Black should be held to be trustees for the benefit of the corporation and its creditors and stockholders. The court below, upon a hearing of the issues and the evidence, found the bill to be without equity, and dismissed the same.

O. C. Moore, of Spokane, Wash., and George H. Walker, of Seattle, Wash., for appellant.

W. W. Black, L. L. Black, and Robert McMurchie, all of Everett, Wash., for appellee Black.

Frank L. Bell, of Glens Falls, N. Y., in pro. per.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] By his amendment to the prayer of the bill, whereby he waived relief upon the ground that the sale of the mining properties to Black and Bell was void for alleged want of jurisdiction of the defendant corporation and other alleged defects in the proceedings in the state court, the appellant left his suit to be determined upon his prayer for a decree that the defendants Bell and Black hold the property, the title to which they acquired by the proceedings in the state court, in trust for the corporation and its creditors and stockholders. The appellant denies that such is the effect of his amendment; but it seems very clear that, having expressly waived relief on the ground of defect of title in Bell and Black, and having confined the relief sought to a prayer for a decree that Bell and Black be held as trustees, he impliedly affirms the legal title so acquired in the proceedings in the state court by Bell and Black, and upon equitable grounds seeks only to charge the property with a trust. All the allegations of the bill, so far as they relate to the relief which is sought, and which are supported by the evidence, are properly to be considered in determining the question whether the appellant is entitled to the relief prayed for.

In substance those allegations are that the mortgages, which were assigned to Bell, were for the most part without consideration and fraudulent; that the claim of Black was illegal and exorbitant, and should not have been allowed; that Black and Bell and the president of the company colluded together for the purpose of acquiring fraudulently the title to the mining properties; that no bona fide defense was made by the company to the suit; that Locke, who appeared as its attorney, did not investigate the merits of the case, or the merits of any of the claims asserted against the corporation; that the value of the property greatly exceeded the sum of $40,000; that Black and Bell owned and controlled a majority of the stock of the corporation, and were in actual control of said corporation; that they carelessly mismanaged said corporation, and neglected their duties as trustees and officers thereof, and committed various breaches of trust.

The record is searched in vain for any evidence to substantiate the charge that Black colluded with Bell, or that either or both colluded

with the president of the corporation, to obtain the mining properties in controversy. So far from collusion between Bell and Black, the evidence is that there was antagonism between them up to the very time when they agreed to bid jointly on the property. There is no evidence whatever that the mining property was worth more than the sum which they bid. The testimony is conclusive that the corporation was then, and had been for some years, insolvent. There is no evidence that any information was withheld from the appellant, or that he was not aware of the condition of the company, and the steps which were taken in the foreclosure suit, and all the proceedings in the receivership in the state court. In fact, the appellant requested Bell to foreclose his mortgages more than a year before the foreclosure suit was commenced, and urged Black to use his influence with Bell to bring about a foreclosure. Nor is there any evidence to impeach the bona fides of the mortgage debt, or of the claim of Black. Both were adjudged to be valid by the state superior court. The evidence, moreover, fails to show that either Black or Bell, or any officers of the corporation, misapplied the funds of the corporation, and there is also total absence of evidence that Black and Bell, or either of them dominated the corporation.

[2, 3] But it is urged that Black, being a trustee and the general manager, occupied a fiduciary relation to the corporation, which prevented him from purchasing at the receiver's sale, and holding adversely the assets of the company, and that the same is true of Bell. The contention, so far as Bell is concerned, is disposed of in few words. Bell was not a trustee of the corporation, and he never had been a trustee, except for one day in the year 1904, when he was temporarily made trustee to fill a vacancy in the board. Nor had he been the attorney of the corporation since the year 1906. He was the assignee of the mortgages. There was no reason in law or equity why he should not foreclose his mortgages and bid upon the mortgaged property at the receiver's sale. It is true that Black occupied a fiduciary relation toward the corporation. But he did not procure the commencement of the foreclosure suit. On the contrary, he had done all that he could to prevent or delay foreclosure. Said the Supreme Court in Allen v. Gillette, 127 U. S. 589, 596, 8 Sup. Ct. 1331, 1334 (32 L. Ed. 271):

"The principle that a trustee may purchase the trust property at a judicial sale brought about by a third party, which he had taken no part in procuring, and over which he could not have had control, is upheld by numerous decisions of this court and of other courts of this country."

At the time of the sale Black, as trustee, exercised no control over the property of the corporation. It had all been placed in the control of a court through its duly appointed receiver, and Black, holding a claim against the corporation, was as free to bid as a purchaser of the property as was any other creditor. Cases applying that principle are Starkweather v. Jenner, 216 U. S. 524, 30 Sup. Ct. 382, 54 L. Ed. 602, 17 Ann. Cas. 1167, Anderson v. Messinger, 146 Fed. 929, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094, and Steinbeck v. Bon Homme Mining Co., 152 Fed. 333, 81 C. C. A. 441. The appellant cites the

recent decision of the Supreme Court of Washington in Stewart v. Baldwin, 149 Pac. 662. But the important distinction between that case and the case at bar is found in the material fact that in that case the administrator, the validity of whose sale of land was in controversy, had filed the petition for the sale of the land, conducted the sale, and purchased the same at his own sale. The opinion in that case, with which we are in accord, has, on account of the distinction we have noted, no application to the case at bar.

[4] But even if the corporation had ground for impeaching the title acquired by Black at the receiver's sale on account of his fiduciary relation to the company—and the appellant is in no stronger position to attack it than would have been the corporation—the right to the relief sought is barred by the appellant's laches. Said the court in Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328:

"The doctrine is well settled that the option to avoid such a sale must be exercised within a reasonable time. This has never been held to be any determined number of days or years as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it which affect that question. These are generally the presence or absence of the parties at the place of the transaction, their knowledge or ignorance of the sale and of the facts which render it voidable, the permanent or fluctuating character of the subject-matter of the transaction as affecting its value, and the actual rise or fall of the property in value during the period within which this option might have been exercised. In fixing this period in any particular case, we are but little aided by the analogies of the statutes of limitation. * * * In this class of cases the party is bound to act with reasonable diligence as soon as the fraud is discovered, or his right to rescind is gone."

In that case a delay of "nearly four years" was held a bar to the suit. The appellant in the case at bar had, as we have seen, full notice of all the proceedings. He waited more than three years after the date of the sale before bringing his suit. In the meantime Bell and Black had expended $25,000 in assessment work on the claims. In Hoyt v. Latham, 143 U. S. 553, 569, 12 Sup. Ct. 568, 574 (36 L. Ed. 259) in a similar case the court said:

"Under the circumstances, we think the plaintiff should have taken immediate action."

In Patterson v. Hewitt, 195 U. S. 309, 319, 25 Sup. Ct. 35, 37 (49 L. Ed. 214) the court said:

"Indeed, in some cases the diligence required is measured by months, rather than by years. * * * And in others a delay of two, three, or four years has been held fatal."

In Pittsburg & I. Co. v. Cleveland I. M. Co., 178 U. S. 270, 20 Sup. Ct. 931, 44 L. Ed. 1065, a delay of 2½ years was held fatal; and in Rothschild v. Memphis & C. R. Co., 113 Fed. 476, 51 C. C. A. 310, the Circuit Court of Appeals for the Sixth Circuit, in a case quite similar to the case at bar, held that an objection made to the sale 17 months after the date thereof was too late.

Again, the rule which requires prompt action is held especially applicable to cases in which a sale of mining property is involved. Twin-Lick Oil Co. v. Marbury, supra; Johnston v. Standard Mining

Co., 148 U. S. 360, 370, 13 Sup. Ct. 585, 37 L. Ed. 480; Pittsburg & I. Co. v. Cleveland I. M. Co., supra; Patterson v. Hewitt, supra. In Twin-Lick Oil Co. v. Marbury, the court said:

"Property worth thousands to-day is worth nothing to-morrow; and that which to-day would sell for $1,000 at its fair value may, by the natural changes of a week, or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger, which is over, has been at the risk of another, to come in and share the profit."

In Johnston v. Standard Mining Co. the court said:

"The duty of inquiry was all the more peremptory in this case, from the fact that the property of itself was of uncertain character, and was liable, as is most mining property, to suddenly develop an enormous increase in value."

We find no error. The decree is affirmed.