**NASELLI v. MILLHOLLAND.**

Civ. A. No. 3726–47.

United States District Court
District of Columbia
March 2, 1950.

944

Meredith M. Daubin, Washington, D. C., for plaintiff.

John H. Burnett, Washington, D. C. (Bauman & Burnett, Washington, D. C.) and Leonard A. Block, Washington, D. C., for defendant.

CURRAN, District Judge.

Plaintiff, Helen Wardman Naselli, sues as beneficiary of an alleged trust to have a successor trustee appointed, with all the rights, powers and duties set forth in an alleged trust agreement executed in 1931. The trustee died in 1938. The instrument was executed by the defendant, Alice Wardman Rheem Millholland, under seal, and provided that she irrevocably assigned, sold, transferred and delivered to the trustee, Harry Wardman, certain shares of stock, to have and to hold the same in trust. The *res* of the trust consisted of 13,550 ordinary shares of one pound each of Park Lane Hotel, Ltd. of London, England. The beneficiaries named were the plaintiff, half-sister of the settlor, who was to have one-half of the net income for life, and the defendant, the settlor, who was to have one-half of the net income for life. The trustee was to distribute one-half of the property forming the trust estate to the natural heirs of the plaintiff at her death and one-half to the natural heirs of the defendant at her death. The trustee, who was the father of the plaintiff and the defendant, accepted the trust and agreed to execute the same according to its terms and conditions by a writing under seal, which also acknowledged receipt by him of all defendant's right, title and interest in and to the property named in the trust agreement. The instrument also provided for notification to the Park Lane Hotel, Ltd. of the transfer of stock standing in the defendant's name.

In the first pre-trial order of December 23, 1948 this Court ruled that a successor trustee should be appointed and that the defend-

ant could assert all her defenses in any proceeding brought by the successor trustee to enforce the alleged trust. Because this would result in a multiplicity of suits the Court has treated this action in the nature of a suit to enforce the terms of the alleged trust brought by one of the beneficiaries of the trust against the settlor, who is the defendant and the other beneficiary under the trust.

The defendant was the owner of certain shares of stock in the Wardman Park Hotel in the District of Columbia. In October 1928 her father, Harry Wardman, notified her that he held 20,000 shares in the Park Lane Hotel, Ltd. for her, the same being recorded in his name, which were to be transferred to her in exchange for her stock in the Wardman Park Hotel. In that letter he also advised her that the certificates were in London and that he would issue instructions to make the transfer of the stock on the books to her and to deliver to her the new certificates. (Defendant's Exhibit No. 1). On October 25, 1929 her father wrote to the defendant as follows: "In accordance with our conversation when I asked you to loan me your 6666 shares of the capital stock of the Park Lane Hotel, this is to confirm my verbal promise to secure you, for this stock which you loaned to me to be used as collateral on a personal loan of $80,000 I was securing." (Defendant's Exhibit No. 2).

The Park Lane stock was not transferred to the defendant until 1930. (Defendant's Exhibit No. 6). Instead of transferring 13,334 shares of stock in the Park Lane, Mr. Wardman transferred 13,550 shares to the defendant. On November 10, 1936 Mr. Wardman wrote the Chairman of the Board of the Park Lane, requesting the issuance of the certificate of stock for the defendant's shares, stating that he wanted "her to have the shares listed in your books in her name." (Defendant's Exhibit No. 5). This request was made notwithstanding the fact that Mr. Wardman had been named trustee of that stock in the alleged trust of 1931. On November 17, 1936 the certificate for the shares of stock in the name of the defendant was mailed to Mr. Wardman. (Defendant's Exhibit No. 6).

The plaintiff received a copy of the alleged trust from her father in 1931. (Naselli Deposition 10, 11). Her father told her "he had established this trust, and showed me a copy." (Naselli Deposition 6). Plaintiff did nothing about the alleged trust, except to talk to her husband about it, until 1938. (Naselli Deposition 22, 23). The father of these parties, the trustee, died in 1938. One or two days later plaintiff showed a copy of the alleged trust to the defendant. At that time Mrs. Naselli's husband requested that a trustee be appointed. (Naselli Deposition 11, 12). The defendant stated that she would "have to think it over, and she would let me know." (Naselli Deposition 13.) Thereafter Mrs. Naselli retained Mr. Donaldson to represent her. (Naselli Deposition 13). Pursuant to such engagement, Mr. Donaldson wrote the defendant a letter on March 29, 1938, stating that he held Mrs. Naselli's power of attorney respecting the alleged trust, and requested an interview. (Defendant's Exhibit No. 7). The defendant replied, stating that she was "not aware of any subsisting trust agreement" and that she would obtain counsel. (Defendant's Exhibit No. 8). The defendant's attorney, Mr. Lesh, wrote Mr. Donaldson on April 7, 1938 that "Mrs. Rheem [defendant] is not aware of any subsisting trust agreement and is not disposed to countenance any claim of her sister to any stock, and on Mrs. Rheem's behalf we must therefore take the position that if her sister is so disposed, she may proceed to assert her claim as she may be advised." (Defendant's Exhibit No. 9). On June 9, 1938 Mr. Donaldson made a second demand on the defendant's counsel for compliance with the trust agreement and for an accounting. (Defendant's Exhibit No. 10). Defendant's counsel replied on June 15, 1938, stating that "we must reiterate the denial of the asserted obligation made in our letter of April 11, 1938." (Defendant's Exhibit No. 11). Nothing further was done respecting this claim until September 16, 1947 when this suit was filed.

The defendant has asserted four defenses: (1) That the alleged trust is void because of uncertainty of time and

manner of determination; (2) that the alleged trust was obtained by a fraud on the defendant; (3) that the plaintiff's claim is barred by the Statute of Limitations; and (4) that the plaintiff's claim is barred by laches. In most states there is no Statute of Limitations applicable to equitable claims, but equitable claims may be barred by laches of the claimant. With regard to the defendant's claim that the present suit is barred by the Statute of Limitations and by laches, it appears that in the District of Columbia the bar to a suit to establish and enforce a trust under the circumstances of this case is determined by the application of the doctrine of laches rather than the Statute of Limitations. Haliday v. Haliday, 56 App.D.C. 179, 11 F.2d 565; Van Senden v. O'Brien, 61 App.D.C. 137, 58 F.2d 689. The bar of laches, unlike the bar of the Statute of Limitations, is determined not merely by lapse of time, but by facts indicating circumstances prejudicial to the defendant, which have arisen by reason of the delay of the plaintiff in asserting his demand. Munter v. Weil Corset Co., Inc., 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652; Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931. Laches is not only an equitable doctrine but one that is controlled by equitable considerations. Halstead v. Grinnan, 152 U.S. 412, 417, 14 S.Ct. 641, 38 L.Ed. 495. The fundamental requisite necessary for its application is an *undue* and *unexplained delay* working an injustice to the other party. Abraham v. Ordway, 158 U.S. 416, 15 S.Ct. 894, 39 L.Ed. 1036.

 In determining whether the beneficiary of a trust is precluded by laches from holding the trustee liable for breach of trust the Court will consider, among others, the following factors: (1) the length of time which has elapsed between the commission of the breach of trust and the bringing of the suit; (2) whether the beneficiary knew or had reason to know of the breach of trust; (3) whether the beneficiary was under an incapacity; (4) whether the beneficiary's interest was presently enjoyable or enjoyable only in the future; (5) whether the beneficiary had complained of the breach of trust; (6) the reasons for the delay of the beneficiary in suing; (7) change of position by the trustee including loss of rights against third persons; (8) the death of witnesses or parties; (9) hardship to the beneficiary if relief is not given; (10) hardship to the trustee if relief is given. Restatement of the Law of Trusts, § 219. Here plaintiff has never received any part of the income from the Park Lane stock. She knew of the alleged trust since 1931 and she took no action to assert her rights until 1947.

In Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214, the owners of a mining claim transferred their interests to one of their number as trustee, who was to retransfer a one-eighth interest in the claim to each one contributing to the development of the claim. Plaintiff contributed his share and demanded a deed, which the trustee refused to give. Plaintiff did nothing for eight years, during which time the trustee and others continued to develop the property. After that eight years plaintiff filed suit to enforce the express trust. The Statute of Limitations was 10 years. The plaintiff relied on the Statute of Limitations, but the court held that laches was a defense to the action and denied the claim. The court said, 195 U.S. 321, 25 S.Ct. 38: "But little need be said in reply to appellants' argument that a trust relation was established between these parties by the oral agreement of 1883, under which Hewitt (the trustee) was to take possession, hold the property for the benefit of all concerned, and ultimately to convey to each his proportionate share. In this connection it is sought to apply the familiar rule that neither laches nor the statute of limitations is applicable against an express trust, so long as that trust continues. Conceding all that can be claimed as to the existence of an express parol trust in this case, the refusal of Hewitt to execute the deed to H. J. Patterson of his interest in the property, of which both appellants had notice, was a distinct repudiation of such trust, which entitled the complainants to immediate relief, and opened the door to * * * laches. Speidel v. Henrici, 120

U.S. 377, 386, 7 S.Ct. 610, [30 L.Ed. 718]; Riddle v. Whitehill, 135 U.S. 621, 634, 10 S.Ct. 924, 34 L.Ed. 282."

The Court concluded: "We are clearly of the opinion that the delay of eight years in this case was inexcusable, and the decree of the court below must, therefore, be affirmed."

In Mason v. MacFadden, 8 Cir., 298 F. 384, a trust was created in 1904, suit was filed to enforce it in 1911, but it was not prosecuted for ten years thereafter. The Court denied relief because of laches (389) and held that the mere filing of the suit did not excuse laches (392).

298 F. at page 389 we find: "From the entire record it is quite apparent that if any trust ever existed it was renounced, openly disavowed, and an adverse interest claimed by the defendant, and was so understood by the plaintiff, at least as early as February or March, 1911. The doctrine of laches would not apply as long as the trust relationship existed, but where there is a repudiation of the trust the door to the defense of laches opens. Speidel v. Henrici, 120 U.S. 377, 7 Sup.Ct. 610, 30 L.Ed. 718; Riddle v. Whitehill, 135 U.S. 621, 10 S.Ct. 924, 34 L.Ed. 282, 283; Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214."

In McCallum v. Anderson, 10 Cir., 147 F.2d 811, a testamentary trustee was named by a testator, no provision for a substitute trustee was made. The trustee, prior to 1928, advised the cestui que trust that the trust amounted to $14,000.00. In 1928, the trustee advised the beneficiary it amounted to $6,000.00. After the death of the trustee in 1931, his nephews assumed the obligations of the trusteeship by common consent. The trust continued to dwindle. The estate of the trustee was closed in 1938 and the beneficiary never made any claim against it. The Court held the beneficiary guilty of laches and denied her relief. The Court said, 147 F.2d at page 815: "While statutes of limitations are not strictly applicable to equitable actions, they are helpful as an analogous guide in the * * * equitable rule of laches. Although a bene-

ficiary is not barred merely by a lapse of time from enforcing an *express trust,* if the trustee repudiates the trust to the knowledge of the beneficiary, laches operates to bar the enforcement of a trust obligation when the beneficiary fails to sue the trustee for breach for so long a time, and under such circumstances that it would be inequitable to permit him to hold the trustee liable. See Restatement of Trusts, section 219. 'Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights, and shows no excuse for his laches in asserting them.' Speidel v. Henrici, 120 U.S. 377, 7 S.Ct. 610, 612, 30 L.Ed. 718. See also Philippi v. Philippi, 115 U.S. 151, 5 S.Ct. 1181, 29 L.Ed. 336; Gillons v. Shell [Oil] Co. of Calif., 9 Cir., 86 F.2d 600; Clark v. City of Chicago, 7 Cir., 70 F.2d 172; Bliss v. Bliss, 65 App.D.C. 147, 81 F.2d 411." (Italics supplied.)

■ If material witnesses have died during the delay of the beneficiary and especially if the person who the beneficiary claims was a trustee has died, or become insane, the Court would be apt to regard the inaction as amounting to laches. Trusts and Trustees, Bogert, Ch. 45, § 949, p. 192.

■ From 1931 to 1938 when Harry Wardman, the trustee, died, plaintiff received nothing from the income from the Park Lane stock and yet she did nothing about it. After the trustee's death, when the plaintiff made a claim against the defendant, the defendant stated that she was not "aware of any subsisting trust agreement" and that she would obtain counsel. (Defendant's Exhibit No. 8). Here was an unequivocal repudiation of the alleged trust. Defendant does admit that it is her signature that is fixed to the alleged trust instrument, but remembers nothing about its creation. The real person who could have thrown needed light upon the subject was Harry Wardman, father of the plaintiff and the defendant, and trustee under the alleged trust agreement. From the time of his death in 1938 until September 16, 1947 the plaintiff did nothing. Here is a proceeding prosecuted without diligence;

948

and the delay, the fault of the plaintiff, resulted in an unfair advantage over the defendant. Under these circumstances equity will in such a case decline to extricate the plaintiff from the position in which she has inexcusably placed herself. Abraham v. Ordway, supra. It follows, therefore, in the light of these circumstances, that the plaintiff is guilty of laches and the complaint is dismissed with prejudice. The facts and the law being stated in this opinion, it will not be necessary to have formal findings of facts and conclusions of law. Counsel for the defendant will prepare the appropriate order not inconsistent with this opinion.